T.C. Memo. 2000-257


UNITED STATES TAX COURT


ROBERT G. BACON AND BARBARA BACON, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 2993-97.                    Filed August 15, 2000.


<u>John R. Crayton</u>, for petitioners.

<u>Richard H. Gannon</u> and <u>Linda Love Vines</u>, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

RUWE, <u>Judge</u>:  Respondent determined deficiencies in petitioners' Federal income taxes, an addition to tax, and penalties as follows:

| Year | Deficiency | Addition to Tax Sec. 6653(b)(1)[1] | Penalties Sec. 6663(a) |
|------|-----------|-----------------------------|------------------|
| 1988 | $107,589 | $83,609 | --- |
| 1989 | 70,297 | --- | $52,723 |
| 1990 | 147,326 | --- | 110,495 |
| 1991 | 77,606 | --- | 58,205 |
| 1992 | 13,927 | --- | 10,445 |

[1]In the notice of deficiency, respondent also determined an addition to tax for 1988 based on 50 percent of the interest due on the underpayment. However, that addition to tax was improperly determined since the Technical and Miscellaneous Revenue Act of 1988, Pub. L. 100-647, sec. 1015(b)(2)(B), 102 Stat. 3568-3569, eliminated that addition to tax.

After concessions,[1] the issues for decision are: (1) Whether petitioners underreported their income for each year in issue; (2) whether any part of an underpayment for each year in issue is due to fraud; and (3) whether assessment of the alleged deficiencies is barred by the statute of limitations.

Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. Throughout this opinion, all amounts have been rounded to the nearest dollar.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated herein by this reference. The petitioners, Robert G. Bacon (Mr. Bacon), and Barbara Bacon (Mrs. Bacon), are husband

[1]Respondent has conceded the deficiency for the year 1992.

and wife. At the time they filed their petition in this case, they resided in Cinnaminson, New Jersey.

Mr. Bacon is a high school graduate. He briefly attended college as a part-time student where he completed courses in Accounting I and II. Mrs. Bacon is a college graduate.

In 1980, Mr. Bacon purchased a bar/restaurant called the Jug Handle Inn under the name of Radtam, Inc., a corporation (Radtam). Mr. Bacon was the sole shareholder of Radtam during the years in issue. The primary source of income for the Jug Handle Inn during this time period was from the sale of food, beer, and liquor. The Jug Handle Inn also derived revenue from lottery sales.

Petitioners timely filed joint Federal income tax returns for each of the years in issue. Petitioners reported adjusted gross income on their Federal income tax returns for the years in issue as follows:[2]

| Year | Adjusted Gross Income |
|------|----------------------|
| 1988 | $44,221 |
| 1989 | 90,840 |
| 1990 | 97,478 |
| 1991 | 99,117 |
| Total | 331,656 |

_____

[2]See appendix A for details of reported income.

During the years in issue, petitioner made deposits into their personal bank accounts in the following amounts:[3]

| Year | Gross Deposits |
|------|----------------|
| 1988 | $843,032 |
| 1989 | 530,188 |
| 1990 | 1,285,386 |
| 1991 | 1,149,802 |
| Total | 3,808,408 |

Some of these deposits were made in the form of cash.  Some of these deposits came from two of Radtam's bank accounts.[4]  Cash deposits and deposits from the Radtam accounts that were made into petitioners' personal bank accounts for the years in issue were as follows:

| | Cash Deposits | Deposits from Radtam Accounts |
|------|---------------|-------------------------------|
| 1988 | $64,372 | $503,855 |
| 1989 | 41,202 | 293,313 |
| 1990 | 90,804 | 453,688 |
| 1991 | 394,311 | 227,543 |
| Total | 590,689 | 1,478,399 |

---

[3]See appendix B for details of deposits to personal accounts.

[4]Account Nos. 600-871255 and 23 856021 3.

During the years in issue, petitioners purchased seven parcels of real property in Mrs. Bacon's name as follows:[5]

| Purchase Date | Purchase Price | Balance Paid at Closing Net of Loans | Cash paid at Closing[1] |
|---|---|---|---|
| 1. 02/23/88 | [2]$412,000 | $3,167 | $3,167 |
| 2. 03/04/88 | [3]585,000 | 285,000 | --- |
| 3. 03/31/89 | 195,000 | 197,017 | 74,285 |
| 4. 06/18/90 | 425,000 | 25,000 | --- |
| 5. 06/29/90 | 530,000 | 152,285 | --- |
| 6. 07/02/90 | 134,000 | [4]131,592 | [5]30,591 |
| 7. 10/18/90 | 250,000 | 35,528 | 5,528 |
| Total | 2,531,000 | 829,589 | 113,571 |

[1]Cash amounts are included in the balance paid at closing amounts.
[2]During 1988, petitioners paid down a $287,069 first mortgage on this property by $283,310. See appendix C.
[3]Mrs. Bacon executed a $300,000 promissory note secured by a mortgage on the property. The $300,000 purchase money note and mortgage required 36 monthly payments of $2,518 and a balloon payment of $288,988 at the end of the 36 months. Monthly payments of $2,518 were made by Mrs. Bacon, or on her behalf, for 36 months and the balloon payment of $288,988 was also paid by Mrs. Bacon, or on her behalf, at the end of 36 months. See appendix C.
[4]Part of the purchase price was paid with a check in the amount of $55,000 purchased with $17,000 in funds withdrawn from Radtam's savings account at Chemical Bank, account No. 600-871255, $28,000 in funds withdrawn from petitioners' personal savings account maintained at Chemical Bank, account No. 623503349, and a check in the amount of $10,000 drawn on petitioners' personal checking account at the same institution. Additionally, $35,000 of the purchase price was paid by a check drawn on petitioners' personal checking account at Barnett Bank, $5,000 by a check drawn on petitioners' personal checking account at First Fidelity Bank, $20,000 by a check purchased from Security Savings & Loan, in part with $19,000 in cash tendered to the bank by petitioners on July 2, 1990, and a check in the amount of $5,000, drawn on the account of Thomas Begley, Jr. Esq., from funds deposited in the same account earlier in 1990.
[5]Includes $10,000 in cash and $1,591 in coin deposited in the account of Burlington County Abstract Co. at closing and $19,000 in cash tendered to Security Savings & Loan by petitioners on July 2, 1990, in part, to purchase a $20,000 check. ($10,000 + $1,591 + $19,000 = $30,591.)

On or about October 19, 1989, petitioners paid Collective Federal Savings Bank $10,657 to modify the terms of their loan agreement on property located at 218 E. 18th Street, North Beach

[5]See appendix C for details.

Haven, New Jersey.  Petitioners paid with a cashier's check, which was paid for with a check drawn on the Radtam lottery account at Security Savings & Loan.[6]

During the taxable years in issue, petitioners made the following expenditures:

| Year | Item | Purchase Price |
|------|------|----------------|
| 1990 | Boston Whaler | [1]$15,850 |
| 1990 | Chrysler Voyager | [2]6,500 |
| 1991 | U.S. Savings Bonds | [3]15,000 |
| Total | | 37,350 |

[1]Paid in cash.
[2]Paid in cash.
[3]These purchases were made with a personal check written on one of petitioners' personal accounts payable to "cash".

On June 15, 1989, Mr. Bacon's cousin, Tadeusz Ras, purchased a residence.  Of the total purchase price, $50,220 was paid in cash.  A check in the amount of $16,600 was also part of the purchase money used to acquire the property.  On June 15, 1989, $16,600 was withdrawn from Radtam's savings account at Chemical Bank.[7]  On June 27, 1989, Tadeusz Ras executed a mortgage on his residence in favor of Mrs. Bacon for $64,000.

Beginning on or before July 1989, petitioners prepared monthly summary sheets on behalf of Radtam, which purportedly listed total deposits into its bank accounts for the month, breaking down the total by category such as food, sales tax,

[6]Account No. 23 856021 3.

[7]Account No. 600-871255.

beer, liquor, etc.  These monthly summary sheets were furnished to petitioners' accountant who prepared Radtam's corporate tax returns.[8]

In addition to the monthly summary sheets, each month petitioners provided their accountant with corporate bank statements and a schedule of corporate disbursements.  The bank statements furnished to the accountant reflected two of Radtam's accounts at Security Savings & Loan.  However, Radtam also maintained a savings account at Chemical Bank[9] from July 1, 1988, through June 30, 1992.  Before 1991, petitioners' accountant was not made aware that Radtam had a bank account with Chemical Bank.  Sometime after 1991, and after the Internal Revenue Service (IRS) began its investigation, petitioners started providing their accountant with monthly summary sheets listing deposits into the Chemical Bank account.

Radtam reported gross receipts and taxable income on its corporate income tax returns as follows:

|  | FYE 6/30/88 | FYE 6/30/89 | FYE 6/30/90 | FYE 6/30/91 | FYE 6/30/92 |
|---|---|---|---|---|---|
| Gross Receipts | $453,734 | $684,395 | $868,601 | $901,615 | $803,517 |
| Taxable Income | [1]18,657 | (616) | 12,308 | (242) | 7,331 |

[1]Radtam was an S corporation in 1988 that reported this amount as ordinary income.

_____

[8]The same accountant prepared petitioners' individual Federal income tax returns and the corporate Federal income tax return for another entity owned by petitioners called Bradam.

[9]Account No. 600-871255.

For purposes of preparing petitioners' Federal income tax returns, Mrs. Bacon prepared annual summaries of personal income sources and expenses relating to petitioners' real properties, which she gave to their accountant. Mrs. Bacon also provided the accountant with Forms 1099 and settlement sheets from each real estate purchase.

In 1991, Mr. Bacon purchased a bar/restaurant called the Whistler's Inn under the name Bradam, Inc. (Bradam). Mr. Bacon was the sole shareholder of Bradam in 1991. The primary source of income for Whistler's Inn was from the sale of food, beer, and liquor.

On or about April 17, 1991, Bradam entered into an agreement to purchase a liquor license, restrictive covenant, and equipment relating to the Whistler's Inn. At settlement, Bradam applied a $50,000 cashier's check toward the purchase. The cashier's check was purchased with amounts withdrawn from Radtam's savings account.[10]

On or about January 6, 1992, Mr. Bacon filed an application for a VISA card listing his occupation as tavern owner of Radtam Inc. t/a Jug Handle Inn and stating that his annual salary was $299,000. Mr. Bacon reported no salary, wages, or dividends from Radtam on his income tax returns for the years in issue.

---

[10]Account No. 600-871255.

On July 14, 1992, both petitioners met with and were interviewed by two special agents from the IRS. During this interview, Mr. Bacon told the agents that petitioners and their children had received extensive cash gifts from Mr. Bacon's grandfather in $10,000 cash increments. According to Mr. Bacon, he received a $10,000 cash gift each year since his 18th birthday, his wife received an annual $10,000 cash gift since they have been married, and their children each received an annual $10,000 cash gift since their birth. Mr. Bacon told respondent's agents that the gifts were from his grandfather and were received through a brother-in-law and that neither petitioners nor their children had ever met their grandfather. Mr. Bacon told the agents that he was told never to tell anyone about the gifts and never to put the money in a bank. Mr. Bacon told the special agents that he may have had as much as $650,000 cash on hand at the beginning of 1988. At trial, petitioners stipulated that at the beginning of 1988, they had approximately $35,000 cash on hand. During the years in issue, petitioners did not receive any gifts, inheritances, legacies, or devises.

OPINION

## I. <u>Unreported Income</u>

Respondent determined deficiencies for the years in issue by using the bank deposit method. Bank deposits are prima facie evidence of income. See <u>DiLeo v. Commissioner</u>, 96 T.C. 858, 869

(1991), affd. 959 F.2d 16 (2d Cir. 1992). Of course, when utilizing this method, all nontaxable sources of deposits must be taken into account. See id. Under the bank deposits method: (1) Bank deposits are totaled; (2) nonincome deposits, redeposits, or transfers are eliminated; (3) an excess of deposits, as adjusted, over reported income is considered to be unreported income; (4) cash expenditures that did not come from deposited funds or nontaxable sources are added to the amount of underreported income; and (5) deductible expenses not accounted for in the taxpayer's return are allowed.[11]

Using the bank deposit method, respondent determined in the notice of deficiency that petitioners understated their income for the years 1988 through 1991 in the following amounts:

| [1]1988 | [2]1989 | [3]1990 | [4]1991 |
|---------|---------|---------|---------|
| $362,461 | $226,693 | $500,851 | $236,417 |

[1] See appendix D for details of computations.
[2] See appendix E for details of computations.
[3] See appendix F for details of computations.
[4] See appendix G for details of computations.

The parties have stipulated that if a bank deposit analysis is to be used, then the following adjustments must be made to respondent's bank deposit analysis in the notice of deficiency:[12]

---

[11]Petitioners have not claimed deductions in addition to what respondent has allowed.

[12]See appendix H for details of these adjustments.

|                          | 1988      | 1989       | 1990       | 1991       |
|--------------------------|-----------|------------|------------|------------|
| Mathematical errors:     | ---       | $71,907    | $78,361    | $368,032   |
| Less reductions for nontaxable items & credits:[1] | (284,603) | (150,922)  | (268,424)  | (434,422)  |
| Plus cash expenditures[2] and debits:[3] | 32,467    | 173,989    | 49,962     | 75,387     |
| Net adjustments to statutory notice: | (252,136) | 94,974     | (140,101)  | 8,997      |

[1]Items that reduce petitioners' taxable income.  The parties have stipulated that these adjustments to respondent's bank deposit analysis are proper.

[2]Including personal items paid by corporation.

[3]Items that increase petitioners' taxable income.  The parties have stipulated that these adjustments to respondent's bank deposit analysis are proper.

Respondent has submitted schedules with his brief that show petitioners' unreported income for the years in issue is as follows:

|                          | [1]1988   | [2]1989    | [3]1990      | [4]1991      |
|--------------------------|-----------|------------|--------------|--------------|
| Total gross deposits:    | $843,032  | $530,188   | $1,285,386   | $1,149,802   |
| Less reductions for nontaxable items, credits,[5] & reported income: | (740,724) | (560,045)  | (1,067,222)  | (1,070,042)  |
| Plus cash expenditures[6] and debits:[7] | 5,447     | 351,378    | 161,451      | 165,568      |
| Adjustments to taxable income: | [8]107,755 | [9]321,521 | [10]379,615  | [11]245,328  |

[1]See appendix I for details.

[2]See appendix J for details.

[3]See appendix K for details.

[4]See appendix L for details.

[5]Items that reduce petitioners' taxable income.  The parties have stipulated that these adjustments to respondent's bank deposit analysis are proper.

[6]Including personal items paid by corporation.

[7]In the bank deposit analysis incorporated in the statutory notice, respondent included net salary deposits of amounts earned by Mrs. Bacon.  The same analysis credits petitioners with the gross amount of her salary rather than the net salary included in petitioners' bank deposits.  Accordingly, respondent increased petitioners' income from bank deposits by the difference between Mrs. Bacon's gross salary and her net salary (salary deposited).

[8]We note that respondent's proposed adjustment to petitioners' 1988 taxable income is $2,570 less than what we arrive at when subtracting the agreed upon adjustments to the bank deposit analysis from respondent's initial computations under the bank deposit analysis. ($362,461 - $252,136 - $107,755 = $2,570)

[9]We note that respondent's proposed adjustment to petitioners' 1989 taxable income is $146 less than what we arrive at when subtracting the agreed upon adjustments to the bank deposit analysis from respondent's initial computations under the bank deposit analysis. ($226,693 + $94,974 - $321,521 = $146)

[10]We note that respondent's proposed adjustment to petitioners' 1990 taxable income is $18,865 more than what we arrive at when subtracting the agreed upon adjustments to the bank deposit analysis from respondent's initial computations under the bank deposit analysis. ($500,851 - $140,101 - $379,615 = $18,865)

[11]We note that respondent's proposed adjustment to petitioners' 1991 taxable income is $86 less than what we arrive at when subtracting the agreed upon adjustments to the bank deposit analysis from respondent's initial computations under the bank deposit analysis. ($236,417 + $8,997 - $245,328 = $86)

With the exceptions noted below (see infra notes 13, 14, and 15), respondent's final bank deposits analysis, as adjusted pursuant to the parties' stipulations, is supported by the facts. On the basis of stipulated facts and evidence admitted at trial, we find that petitioners had unreported income of $102,748[13] in 1988, $320,661[14] in 1989, $358,215[15] in 1990, and $245,328 in 1991.

Petitioners argue that respondent's bank deposit method is fundamentally flawed. Admittedly, there have been a significant

[13]We eliminated a $5,007 item in respondent's bank deposit analysis for corporate expenditures on petitioners' behalf because the proposed adjustment was not supported by the record. The omission has the effect of reducing petitioners' unreported income by $5,007.

[14]We eliminated an $860 item in respondent's bank deposit analysis for corporate expenditures on petitioners' behalf because the proposed adjustment was not supported by the record. The omission has the effect of reducing petitioners' unreported income by $860.

[15]We eliminated a $2,535 item in respondent's bank deposit analysis for corporate expenditures on petitioners' behalf because the proposed adjustment was not supported by the record. The omission has the effect of reducing petitioners' unreported income by $2,535. We also reduced respondent's final computation of unreported income by $18,865. This is the amount by which respondent's final unreported income determination exceeds the amount arrived at pursuant to the stipulated adjustments to the notice of deficiency. (See supra p.11, table note 10.)

number of adjustments to respondent's bank deposit analysis, and the computations involve considerable detail. Nevertheless, the facts in the record, most of which were stipulated, support respondent's final computations as adjusted. Indeed, on brief, petitioners focus their factual dispute on only four specific matters in the bank deposit analysis. We address each of the specific factual matters that petitioners dispute.

A. Cash on Hand

Petitioners assert that respondent should reduce their 1988 unreported taxable income under the bank deposit analysis by $35,000. According to petitioners, the adjustment is necessary because they had $35,000 cash on hand at the beginning of the year.

An adjustment to respondent's bank deposit analysis would be appropriate if petitioners had less than $35,000 at the end of the year. If petitioners started with $35,000 cash at the beginning of the year but had less than $35,000 at the end of the year, then the difference could have been nontaxable source of deposits to petitioners' bank accounts or a nontaxable source of cash expenditures by petitioners. However, Mr. Bacon testified that he kept substantial amounts of cash on hand at all times during the years in issue. Indeed, petitioners prepared a loan application dated March 8, 1990, which reflected $35,000 cash on hand. There is no credible evidence that petitioners' cash on hand was less than $35,000 at the end of any of the years in

issue.  On the basis of the record, we cannot conclude that an adjustment to respondent's bank deposit analysis is justified for cash on hand.

B.  Loan to Tadeusz Ras

Respondent increased petitioners' 1989 unreported income under the bank deposit analysis by $64,000 due to an alleged transfer from Mrs. Bacon to Tadeusz Ras (Mr. Ras).  Petitioners argue that the alleged transfer should be eliminated from the bank deposit analysis, since no transfer ever took place.

Mr. Ras is Mr. Bacon's cousin and has been continuously employed by Radtam since 1991.  When Mr. Ras started working for Mr. Bacon in 1991, he was paid approximately $5 to $6 per hour.  Mr. Ras cared for Mr. Bacon's grandmother before he was employed by Radtam.

On June 15, 1989, Mr. Ras purchased a house.  According to the settlement statement, Mr. Ras owed the seller $108,213 and satisfied this obligation with $50,220 in cash and paid the remainder with a number of checks.  One of the checks used to purchase the house was in the amount of $16,600.  On the day of Mr. Ras' purchase, the sum of $16,600 was withdrawn from Radtam's savings account at Chemical Bank.[16]  On June 27, 1989, Mr. Ras executed a mortgage on his residence in favor of Mrs. Bacon in the amount of $64,000.

Mr. Ras testified that his grandmother, not Mrs. Bacon,

---

[16]Account No. 600-871255.

provided him with the money to purchase the house. When he was asked how his grandmother managed to accumulate $50,220 in cash, Mr. Ras was unable to provide an answer. When he was asked who issued the checks for the remainder of the purchase price, Mr. Ras could not provide a definite answer, nor could he deny that Mr. Bacon provided him with some of the checks. When he was asked why he signed a $64,000 mortgage in favor of Mrs. Bacon if she had not lent him the money, Mr. Ras said that Mr. Bacon told him to sign and that he would sign anything that Mr. Bacon gave him.

We do not find Mr. Ras' explanation to be credible. On the basis of the facts, we find that petitioners provided Mr. Ras with $64,000 and that he in turn executed a mortgage on the house in the amount of $64,000.

C. Real Estate Deposits

Petitioners argue that respondent should reduce their unreported taxable income under the bank deposit analysis by $9,000 for 1988 and $4,000 for 1990. According to petitioners, they issued checks totaling $13,000 to make deposits on unconsummated real estate transactions. This resulted, according to petitioners, in the return of $13,000 of nontaxable funds that were either redeposited or cashed.

Petitioners have not established that these transactions ever took place or that the amounts in question were returned to

them.  No adjustment to respondent's bank deposit analysis is necessary for this item.

   D.  Loans Payable to Mrs. Bacon

Petitioners argue that respondent should reduce their unreported taxable income under the bank deposit analysis by $319,109.  Petitioners allege that such an adjustment is necessary because in 1989 Radtam owed Mrs. Bacon $319,109. Petitioners argue that, to the extent that the bank deposit analysis indicates the underreporting of income from Radtam, petitioners should be given credit for $319,109 as being for the repayment of previous loans from Mrs. Bacon.  Respondent argues that petitioners have not substantiated that Radtam owed Mrs. Bacon $319,109 in 1989.

To support petitioners' contention, petitioners rely on Radtam's Federal income tax return for the fiscal year ended June 30, 1989.  Page four of the income tax return included a balance sheet which listed "Mortgages, notes, bonds payable in less than 1 year" (notes payable) of $319,109.  The income tax return does not identify the persons or entities to whom Radtam owed $319,109.  Petitioners' C.P.A., Jerome Collins, prepared the June 30, 1989, Federal income tax return.[17]  The income tax return was filed in March of 1991.

---

[17]Mr. Collins also prepared petitioners' individual Federal income tax returns for the years 1988, 1989, 1990, and 1991.

Mr. Collins testified that he did not ask either Mr. Bacon or Mrs. Bacon whether the $319,109 entry on the June 30, 1989, balance sheet was a loan payable to Mrs. Bacon.  Furthermore, Mr. Collins testified that he did not see any documents that would indicate that the corporation owed Mrs. Bacon $319,109.[18] Petitioners did not provide corporate minutes, loan documents, promissory notes, mortgage documents, or other documents that would substantiate their assertion.

Mr. O'Malley, petitioners'new C.P.A., testified that he does not know how Mr. Collins arrived at the loan payable figures that appeared on Radtam's Federal income tax return for the fiscal year ending June 30, 1989.  Mr. O'Malley also testified that he could not obtain any information about the loans payable account.

Radtam's Federal income tax returns for the fiscal years ending 1990, 1991, and 1992, were all filed in June of 1996.[19]

---

[18]Although he never asked petitioners about this, Mr. Collins testified that he thought the $319,109 was rent that Radtam owed Mrs. Bacon.  If that were true, payments of rental amounts due from prior years would appear to be income to Mrs. Bacon in the year received.

[19]Mr. Collins testified that Radtam's Federal income tax returns were not prepared or filed timely because details regarding cash disbursements were not available.  Each of these income tax returns contained a Form 8275, Disclosure Statement. The instructions to Form 8275 provide:

Form 8275 is used by taxpayers and income tax return preparers to disclose items or positions, except those taken contrary to a regulation, that are not otherwise adequately disclosed on a tax return for purposes of avoiding certain penalties.  The form is filed to avoid the portions of the accuracy-related penalty due to

(continued...)

None of those income tax returns contained any balance sheet information.[20]  The lack of balance sheet information on subsequent Radtam Federal income tax returns suggests that Mr. Collins did not have sufficient detail to prepare the balance sheets and that a note payable to Mrs. Bacon never existed.

The evidence does not support petitioners' assertion that Radtam owed Mrs. Bacon $319,109 in 1989, and we do not believe

---

[19](...continued)
disregard of rules or to a substantial underpayment of income tax if the return position has a reasonable basis.  It can also be used for disclosures relating to the preparer penalties for understatements due to unrealistic positions or disregard of rules.

The description of the items disclosed in Part I, General Information, of the form was the same for each year.  The description provided was as follows: Gross receipts, Cost of Sales, Payroll and other Expenses.

The instructions for completing Part II of the form, Detailed Explanation, provide that a taxpayer's disclosure must include:

> (1) A description of the relevant facts and the nature of the controversy affecting the tax treatment of the item, or

> (2) A concise description of the legal issues presented by these facts.

The detailed explanation provided on Radtam's Federal income tax returns for its fiscal years ending 1990, 1991, and 1992 was the same for each year.  The explanation provided was as follows: "Payroll, Sales and some expenses were established by other estimates and means.  Due to certain records which could not be reconstructed or documented."

[20]The Federal income tax returns for the fiscal years ending June 30, 1993 and 1994, also did not contain any balance sheet information.

petitioners' assertion in this regard.  Thus, we find that the bank deposit analysis does not have to be adjusted for this item.

## II.  Fraud

The next issue is whether any part of the underpayment of income tax for each year in issue is due to fraud.  Respondent's notice of deficiency determined that petitioners are liable for the addition to tax for fraud imposed under section 6653(b)(1)[21] for the taxable year 1988 and penalties under section 6663(a)[22] for the taxable years 1989, 1990, and 1991.  Each section imposes an addition to tax or penalty equal to 75 percent of the portion of an underpayment that is attributable to fraud.  Additionally, each section provides that if any portion of an underpayment is attributable to fraud, the entire underpayment is treated as attributable to fraud, unless the taxpayer proves that some portion of the underpayment is not due to fraud.  Finally, in the case of a joint return, the fraud penalty does not apply with

---

[21]Sec. 6653(b) provides, in part:

    SEC. 6653(b). Fraud.--

    (1) In general.--If any part of any underpayment * * * of tax required to be shown on a return is due to fraud, there shall be added to the tax an amount equal to 75 percent of the portion of the underpayment which is attributable to fraud.

[22]Sec. 6663(a) provides:

    SEC. 6663(a). Imposition of Penalty.--If any part of any underpayment of tax required to be shown on a return is due to fraud, there shall be added to the tax an amount equal to 75 percent of the portion of the underpayment which is attributable to fraud.

respect to a spouse unless some part of the underpayment is due to fraud of such spouse.  See secs. 6653(b)(3) for 1988 and 6663(c) for the years 1989, 1990, and 1991.

Respondent has the burden of proving by clear and convincing evidence that an underpayment exists for the years in issue and that some portion of the underpayment is due to fraud.  See sec. 7454(a); Rule 142(b); Niedringhaus v. Commissioner, 99 T.C. 202, 210 (1992).  Consequently, respondent must establish: (1) Petitioners have underpaid their taxes for each year, and (2) some part of the underpayment is due to fraud.  See DiLeo v. Commissioner, 96 T.C. 858, 873 (1991), affd. 959 F.2d 16 (2d Cir. 1992).

Respondent need not prove the precise amount of the underpayment resulting from fraud but only that some portion of the underpayment of tax for each year is due to fraud.  See Niedringhaus v. Commissioner, supra at 210.

A.  Understatement of Income

Where allegations of fraud are intertwined with unreported and indirectly reconstructed income, respondent is required to establish a likely taxable source for alleged unreported income or to disprove nontaxable sources alleged by the taxpayer.  See DiLeo v. Commissioner, supra at 873.

The evidence clearly establishes that the Jug Handle Inn was a likely source of unreported income.  The evidence also establishes that petitioners had no nontaxable sources that could

account for the unreported income. Mr. Bacon originally claimed to have had $650,000 in nontaxable cash gifts on hand at the beginning of 1988, which would have been a potential nontaxable source. However, at trial petitioners stipulated that they only had $35,000 cash on hand at the beginning of 1988. Petitioners stipulated that they did not receive any gifts, inheritances, legacies, or devises.

Respondent's final bank deposit analysis is based primarily on stipulated facts. The record contains clear and convincing affirmative evidence that petitioners underpaid their 1988, 1989, 1990, and 1991 Federal income taxes.

B. Fraudulent Intent

Respondent must prove that a portion of the underpayment is attributable to the fraudulent intent of petitioners. Fraud is the intentional wrongdoing motivated by a specific purpose to evade a tax known or believed to be owing. See Stoltzfus v. United States, 398 F.2d 1002, 1004 (3d Cir. 1968). The existence of fraud is a question of fact to be resolved upon consideration of the entire record. See Gajewski v. Commissioner, 67 T.C. 181, 199 (1976), affd. without published opinion 578 F.2d 1383 (8th Cir. 1978).

Fraudulent intent can seldom be established by a single act or by direct proof of the taxpayer's intention. It is usually found by surveying the taxpayer's whole course of conduct and is to be proven as any other fact from all the evidence of record

and reasonable inferences properly to be drawn therefrom.  See Otsuki v. Commissioner, 53 T.C. 96, 106 (1969).  Any conduct, the likely effect of which would be to mislead or to conceal may establish an affirmative act of evasion.  See Spies v. United States, 317 U.S. 492, 499 (1943).

The courts have relied upon a number of indicia of fraud in deciding whether an underpayment of tax is due to fraud.  While no single factor is necessarily sufficient to establish fraud, the existence of several indicia is persuasive circumstantial evidence of fraud.  See Petzoldt v. Commissioner, 92 T.C. 661, 700 (1989).

Respondent argues that the following factors or "badges" of fraud are present in this case:  (1) A substantial and consistent understatement of income; (2) false statements made by petitioners during their interview with respondent's agents; (3) extensive dealings in cash; (4) failure to maintain adequate records; and (5) failure to furnish their return preparer with accurate information.

### 1.  Substantial and Consistent Understatement of Income

The consistent failure to report substantial amounts of income over a number of years, standing alone, is effective evidence of fraudulent intent.  See Schwarzkopf v. Commissioner, 246 F.2d 731, 734 (3d Cir. 1957), affg. and remanding on another issue T.C. Memo. 1956-155.  In this case, there is a substantial

underpayment of tax for each of the years in issue.  Over the 4-year period in issue, petitioners failed to report approximately $1 million dollars of income.

### 2.  False Statements

Respondent argues that false statements made at the time petitioners were interviewed by respondent's agents are evidence of fraudulent intent.  The Supreme Court has stated that an "affirmative willful attempt may be inferred from * * * any conduct, the likely effect of which would be to mislead or to conceal."  Spies v. United States, supra at 499.  Making false statements to a revenue agent is evidence of fraud.  See United States v. Beacon Brass Co., 344 U.S. 43, 45 (1952).

When petitioners first met with respondent's special agents regarding the years in question, Mr. Bacon told them that petitioners and their children had received extensive cash gifts from Mr. Bacon's grandfather in $10,000 cash increments. According to Mr. Bacon, he received a $10,000 cash gift each year since his 18th birthday, his wife received an annual $10,000 cash gift since they have been married, and their children each received an annual $10,000 cash gift since their birth.  Mr. Bacon told respondent's agents that he received the cash gifts through a brother-in-law, that neither petitioners nor their children had ever met their grandfather, that they were told never to tell anyone about the gifts, and that they were never to put the money in the bank.  Mr. Bacon told the agents that

petitioners had as much as $650,000 cash on hand at the beginning of 1988. Mr. Bacon's statement about cash on hand was false. Petitioners stipulated that at the beginning of 1988, they had approximately $35,000 cash on hand. Had Mr. Bacon's statements about cash on hand at the beginning of 1988 been true, petitioners would have had a nontaxable source from which to make deposits during the years in issue. We can conceive of no reason for such a false statement other than to mislead the agents.

We find that Mr. Bacon's statements about cash on hand during this interview were intended to mislead the agents.

### 3. Extensive Dealings in Cash

Dealing in cash to avoid scrutiny of one's finances is a badge of fraud. See Bradford v. Commissioner, 796 F.2d 303, 307-308 (9th Cir. 1986), affg. T.C. Memo. 1984-601. Petitioners made numerous and substantial cash transactions during the 4 years in issue. During this period, $590,689 in cash was deposited into petitioners' personal bank accounts and $113,571 in cash was used in the purchase of real estate.[23] All real estate purchases were in Mrs. Bacon's name, and she attended some, if not most, of the property settlements. A boat and a personal van were also purchased for $22,350 in cash.

Petitioners' extensive use of cash supports a reasonable inference that petitioners were knowingly and willfully attempting to understate their taxable income.

---

[23]See appendix C.

#### 4.  Failure To Maintain Adequate Records

Taxpayers are required to keep such records as are necessary for the determination of tax.  See sec. 6001.  The failure to keep adequate records is a badge of fraud.  See Bradford v. Commissioner, supra at 307.

During the years in issue, petitioners transferred $1,478,399 from two Radtam accounts into their personal bank accounts.  Despite the significant transfers between Radtam's accounts and personal accounts, petitioners appear to have maintained no records of these transactions.  Rather, they argue that they were unaware of the accounting problems being created and that they lacked the technical ability to keep corporate books or prepare tax returns.

Petitioners also deposited $590,689 in cash into their personal bank accounts.  At trial, Mr. Bacon testified he did not know the source of these significant cash deposits.

While Mr. Bacon testified that he was unaware of the problems created by commingling funds, his testimony is self-serving, and we do not find him to be credible.  Mr. Bacon appears to us to be an astute businessman and investor.  It would have required relatively little, if any, technical ability to maintain, or hire a bookkeeper to maintain, a record of transfers between corporate and individual accounts or records of the source of petitioners' substantial cash deposits to their personal accounts.

Mrs. Bacon also had a working knowledge of Radtam's books and records. Mrs. Bacon testified about the "settling" of daily cash register receipts and the recording of Radtam's income during the years in issue. Mrs. Bacon prepared disbursement summaries from Radtam's account at Security Savings & Loan, which were furnished to petitioners' accountant. While Mr. Bacon handled most of the deposits, Mrs. Bacon handled some deposits and testified that she may have handled some large cash deposits.

5. Failure To Furnish Their Tax Return Preparer With Accurate Information

The duty of filing accurate returns cannot be avoided by placing responsibility upon an agent. See American Properties, Inc. v. Commissioner, 28 T.C. 1100, 1116 (1957), affd. 262 F.2d 150 (9th Cir. 1958).

Beginning on or before July 1989, petitioners prepared a monthly summary sheet on behalf of Radtam, which purportedly listed total deposits into its bank accounts for that month. These monthly summary sheets were furnished to petitioners' accountant who prepared Radtam's corporate tax returns[24]. In addition to the monthly summary sheets, each month petitioners provided their accountant with corporate bank statements and a schedule of corporate disbursements.

---

[24]The same accountant prepared petitioners' individual Federal income tax returns and Bradam's corporate Federal income tax returns.

The bank statements provided to petitioners' accountant were primarily for two accounts at Security Savings & Loan. Yet Radtam maintained a savings account at Chemical Bank[25] from July 1, 1988, through June 30, 1992. It was not until after the commencement of the examination by respondent that petitioners' accountant learned that Radtam had a savings account with Chemical Bank.

Mrs. Bacon prepared annual summaries of personal income sources and expenses relating to petitioners' real estate, which she gave to their accountant. Mrs. Bacon also provided the accountant with Forms 1099 and settlement sheets from each real estate purchase.

During the years in issue, petitioners transferred $1,478,399 from two Radtam accounts and deposited $590,689 in cash into their personal accounts. Despite the significant deposits into petitioners' personal accounts, Mrs. Bacon did not disclose these deposits or provide personal bank statements to their accountant.

On or about January 6, 1992, Mr. Bacon filed an application for a VISA card listing his occupation as tavern owner of Radtam Inc. t/a Jug Handle Inn and listed his annual salary as $299,000. However, Mr. Bacon never reported receiving any salary or

---

[25]Account No. 600-871255.

dividends from Radtam on his individual Federal income tax returns.[26]

After considering the entire record, we hold that respondent has met his burden of proving that some portion of petitioners' underpayment for each year in issue is attributable to fraud on the part of both Mr. and Mrs. Bacon.

III. Statute of Limitations

Section 6501(a) provides, generally, for a 3-year period of limitations. However, in the case of a false or fraudulent return with the intent to evade tax, the tax may be assessed, or a proceeding in court for collection of such tax may be begun without assessment, at any time. See sec. 6501(c)(1). Where a joint Federal income tax return was filed, a finding that fraud was committed by either spouse keeps the period of limitations on assessment open with respect to both spouses. See Vannaman v. Commissioner, 54 T.C. 1011, 1018 (1970).

Since we have already found that the returns for the years in issue were fraudulent, it follows that the exception found in

_____

[26]Mr. Bacon testified that he did not want to confuse the credit card company with the fact that he did not draw a salary but instead had substantial rental income. On their 1991 income tax return, petitioners reported $135,000 gross rents from property located at Route 73, Cinnaminson, N.J. (the property rented to Radtam on which the Jug Handle Inn is located). Petitioners' total net rental income reported for 1991 was $65,277. Petitioners reported gross rental receipts of $368,930, rental expenses, other than depreciation of $221,217, and depreciation of $82,435 on their Schedule E, Supplemental Income and Loss Schedule.

section 6501(c)(1) applies, and the assessment of taxes for the years in issue is not barred.

After concessions by respondent,

<u>Decision will be entered</u>

<u>under Rule 155</u>.

APPENDIX A

Income Reported on Tax Returns by Year

|                      | 1988     | 1989     | 1990     | 1991     |
|----------------------|----------|----------|----------|----------|
| Wage/salary[1]       | $3,196   | $3,008   | $2,840   | $3,003   |
| Interest income      | 3,286    | 4,631    | 9,426    | 21,522   |
| Dividend income      | 1,357    | 1,123    | 1,170    | 1,202    |
| Sch. D income        | 1,088    | -0-      | -0-      | -0-      |
| Pension/annuities    | 4,060    | 4,263    | 4,263    | 4,263    |
| Social Security      | 5,094    | 4,710    | 5,544    | 5,850    |
| Rents                | [2]28,140| [3]75,105| [4]76,485| [5]65,277|
| IRA deduction        | (2,000)  | (2,000)  | (2,250)  | (2,000)  |
| Adjusted gross income| 44,221   | 90,840   | 97,478   | 99,117   |

[1]During the years in issue, the only wage or salary income from Bradam and Radtam reported by petitioners on their Federal income tax returns consisted of wages reported by Mrs. Bacon.

[2]Petitioners reported on Schedule E gross rental income of $136,000, rental expenses of $93,600, depreciation or depletion expenses of $32,917, and Radtam S earnings of $18,657. ($136,000 - $93,600 - $32,917 + $18,657 = $28,140)

[3]Petitioners reported on Schedule E gross rental income of $232,000, rental expenses of $115,388, and depreciation or depletion expenses of $41,507. ($232,000 - $115,388 - $41,507 = $75,105).

[4]Petitioners reported on Schedule E gross rental income of $311,700, rental expenses of $172,150, and depreciation or depletion expenses of $63,065. ($311,700 - $172,150 - $63,065 = $76,485)

[5]Petitioners reported on Schedule E gross rental income of $368,930, rental expenses of $221,217, and depreciation or depletion expenses of $82,436. ($368,930 - $221,217 - $82,436 = 65,277)

APPENDIX B

<u>Deposits Made to Personal Bank Accounts</u>

| Bank Account | 1988 | 1989 | 1990 | 1991 |
|---|---|---|---|---|
| Energy People Federal Credit Union<br>Savings account No. 11195-004 | [1]$5,000 | --- | --- | --- |
| Barnett Bank<br>Checking account No. 1672684397 | 16,316 | $27,523 | $125,640 | $59,702 |
| Horizon Bank[2]<br>Checking account No. 00506140-3 | [3]270,674 | 250,835 | 395,039 | 340,750 |
| Security Savings & Loan<br>Checking account No. 23-8351019-1 | 182,947 | 142,400 | 219,001 | 343,915 |
| Security Savings & Loan<br>Passbook account No. 23-1006720 | 89,748 | --- | 15,575 | 6,400 |
| First Fidelity Bank<br>Money Market account No. 0010186161 | 278,347 | 32,867 | 176,807 | 63,395 |
| Chemical Bank<br>Savings account No. 623-503-349 | --- | 76,051 | 57,137 | 13,802 |
| Collective Federal Bank<br>Savings account No. 36-6-750909 | --- | 512 | 18,922 | 7,119 |

(continued...)

(Appendix B continued...)

| Bank Account | 1988 | 1989 | 1990 | 1991 |
|---|---|---|---|---|
| Barnett Bank<br>Money Market account No. 1679177650 | --- | --- | 277,265 | 24,719 |
| Barnett Bank<br>Certificates of Deposit<br>account No. 0031756406 | --- | --- | --- | 97,000 |
| Barnett Bank<br>Certificates of Deposit<br>account No. 0031760714 | --- | --- | --- | 96,000 |
| Barnett Bank<br>Certificates of Deposit<br>account No. 0031760659 | --- | --- | --- | 97,000 |
| Total Gross Deposits: | 843,032 | 530,188 | 1,285,386 | 1,149,802 |

[1] A single cash deposit made on Dec. 28, 1988.

[2] Subsequent to the years in question, Horizon was acquired by Chemical Bank. Thus, the terms "Horizon" and "Chemical" refer to the same institution.

[3] The notice of deficiency incorrectly shows 1988 deposits in this account as $239,218.

APPENDIX C

| Property | Payments Terms and Payments Made |
|---|---|
| 1. 211 E. 17th Street, Long Beach Township, New Jersey -- Purchased 2/23/88 | The contract sales price was $412,000 and the gross amount due from Mrs. Bacon was $415,167. To finance the purchase, Mrs. Bacon paid $3,167 in cash, assumed a $287,069[1] first mortgage on the property, and secured a $124,931 second mortgage on the property. During 1988, petitioners paid down the $287,070 first mortgage by $283,310. The payments were made over an 8-month period of time, consisted of five payments,[2] all drawn on petitioners' personal bank accounts. The $124,931 second mortgage required a single payment of $124,931 in 1 year.[3] |
| 2. Lots 7, 8, 13, and 14, Block 304, Marco Beach Unit 9 located in Collier County, Florida. -- Purchased 3/4/88 | Mrs. Bacon put down 10 percent or $58,500 as a deposit, executed a $300,000 promissory note secured by a mortgage on the property, and paid the balance on or before the closing.[4] The $300,000 purchase money note and mortgage required 36 monthly payments of $2,518 and a balloon payment of $288,988 at the end of the 36 months. Payments on the purchase money note and mortgage were made in accordance with the terms. |

[1] The settlement statement indicates that the existing loan assumed is $287,069, while the stipulation indicates that the existing loan assumed was $287.070 (after rounding). We assume that the stipulation contained a typographical error.

[2] From petitioners' First Fidelity account, No. 0186161, a payment of $76,509 was made on Apr. 1, 1988; a $94,950 payment on May 1, 1988; and a $40,035 payment on June 1, 1988. From petitioners' Security Savings & Loan account, No. 238351019, a payment of $64,311 was made on Nov. 27, 1988, and a $7,504 payment was made on Nov. 30, 1988.

[3] The payment was satisfied on Feb. 21, 1989, in part by a $60,931 cashier's check drawn on petitioners' First Fidelity account and $64,000 in funds withdrawn from Radtam's savings account at Chemical bank, account No. 600-871255.

[4] A portion of the payments, $158,375, was financed from $338,097 in loan proceeds secured by property located at Block D-32, Lot 8, 216 E. 18th Street, North Beach Haven, NJ. The remaining $179,722 of the loan proceeds was deposited in Radtam's account No. 23-835065-6.

| | |
|---|---|
| 3.  212 West Broad St., and Palmyra, New Jersey, Purchased 3/31/89 | The contract sale price was $195,000. At closing, $197,017, consisting of $74,285 in cash and three checks totaling $122,732, was deposited with the settlement agent.  The individual check amounts are:  $82,000, $21,000, and $19,732.<br><br>The source of funds, in part, for the $82,000 check was obtained in the form of cash withdrawals from Radtam's general and lottery accounts at the Security Savings & Loan.  Additionally, $21,000 was withdrawn from Radtam's savings account at Chemical Bank[5] and used to purchase a cashier's check, which was used to pay a portion of the purchase price. |
| 4.  Lot 26, Block 388, Unit 12, located in Collier County, Florida -- Purchased 6/18/90 | The property was purchased with $25,000 in personal funds and a $400,000 purchase money mortgage was incurred. |
| 5.  Lot 4, Block 304, Unit 9, located in Collier County, Florida -- Purchased 6/29/90 | The purchase price was $530,000 and the total amount due from buyer was $533,896.  At closing, Mrs. Bacon provided $152,285, and the principal amount of the new loan was $380,000. |
| 6.  610 South Reed St., Cinnaminson, New Jersey, Purchased 7/2/90 | The property was paid for with $10,000 in cash, $1,592 in coin, and five checks totaling $120,000.  Mr. Bacon, as president of Radtam, Inc., was the source of the $11,592 in cash and coin. The source of the five checks are as follows:  First, a check for $55,000 was purchased with $17,000 in funds withdrawn from the Radtam 600 account, $28,000 in funds withdrawn from petitioners' personal savings account maintained at the same institution,[6] and a $10,000 check drawn on petitioners' personal checking account at the same institution.  Second, $35,000 of the |

[5] Account No. 600-871255.
[6] Account No. 623503349.

purchase price was paid by check drawn on petitioners' personal checking account at Barnett Bank.  Third, $5,000 of the purchase price was paid by check drawn on petitioners' personal checking account at First Fidelity Bank.  Fourth, a $20,000 check purchased from Security Savings & Loan, in part with $19,000 in cash tendered to the bank by petitioners on July 2, 1990, and a $5,000 check, drawn on the account of Thomas Begley, Jr., Esq., from funds deposited in the same account earlier in the year.

| 7.  407 North Canal St., Cinnaminson, New Jersey, Purchased 10/18/90 | Mrs. Bacon deposited $35,528 at closing for the property.  The deposit consisted of $5,528 in cash and a check for $30,000.  The $30,000[7] cashier's check was purchased with a check drawn on petitioners' Chemical Bank account.[8] |

[7] The stipulation incorrectly refers to property located at 417 North Canal Avenue when, in fact, the property is located at 407 North Canal Avenue.
[8] Account No. 00506140-3.

APPENDIX D

1988

Bank deposits to personal accounts:

| Bank | Account Number | Deposit |
|------|----------------|---------|
| Energy People |  |  |
| Federal Credit Union | 11195-004 | $5,000 |
| Barnett Bank | 1672684397 | 16,316 |
| Chemical Bank | 00506140-3 | 239,218 |
| Security Savings |  |  |
| & Loan | 23-8351019-1 | 182,947 |
| Security Savings |  |  |
| & Loan | 23-1006720 | 89,748 |
| First Fidelity | 0010186161 | 278,347 |
| Total gross deposits |  | 811,576 |

Less:
| | |
|---|---|
| a. Redeposited items, transfers, checks to cash | (221,947) |
| b. Nontaxable items | (5,094) |
| c. Repayment to corporation | (73,000) |
| Equals: Net deposits | 511,535 |

Less:
| | |
|---|---|
| a. Wages/salary per return | (3,196) |
| b. Interest income per return | (3,286) |
| c. Dividend income per return | (1,357) |
| d. Schedule D per return | (1,088) |
| e. Pension/annuities | (4,060) |
| f. Social Security (tax) | (5,094) |
| g. Rents (gross) | (136,000) |
| Equals: Total deposits in excess of reported income | 357,454 |

Plus:
| | |
|---|---|
| a. Corporate checks written for personal benefit of taxpayers | 5,007 |
| Equals: Unreported income for 1988 | 362,461 |

APPENDIX E

1989

Bank deposits to personal accounts:

| Bank | Account Number | Deposit |
|---|---|---|
| Energy People Federal Credit Union | 11195-004 | --- |
| Barnett Bank | 1672684397 | $27,523 |
| Chemical Bank | 00506140-3 | 250,835 |
| Security Savings & Loan | 23-8351019-1 | 142,400 |
| Security Savings & Loan | 23-1006720 | 72,000 |
| First Fidelity | 0010186161 | 27,867 |
| Chemical Bank | 623-503-349 | 76,051 |
| Collective Federal | 36-6-750909 | 512 |
| Total bank deposits - 1989 | | 597,188 |

Cash expenditures:
  a. Note receivable (Ras)                        64,000
  b. Purchase 212 W. Broad Street (3/31/89)       74,285

Rental income checks paid by Radtam, Inc. to
taxpayer and not deposited into taxpayer's
bank accounts used in above analysis.            41,000

Rental income checks paid to taxpayer by
managing agent(s) of taxpayer's Marco Island,
FL rental properties and not deposited into
taxpayers' bank accounts used in above analysis.
Agent:  Horizon by Sea                            3,250
  Total gross income - 1989                      779,723

Less nontaxable deposits/items:
  a. Paybacks to corp. from personal account     (55,925)
  b. Social Security benefits (nontaxable)        (4,710)
  c. Transfer between accounts                   (173,000)

Receipts per return:
  a. Wages/salary per return                      (4,631)
  b. Interest income per return                   (3,008)
  c. Dividend income per return                   (1,123)
  d. Pension/annuities                            (4,263)
  e. Social Security (tax)                        (4,710)
  f. Rents (gross)                               (232,000)
Equals: Total nontaxable deposits/items         (483,370)

Total gross income unreported                    296,353
Taxable income per return                        (71,907)
Total income unreported                          224,446
Personal items paid by corporation                2,247
Total unreported income - 1989                   226,693

APPENDIX F

1990

Bank deposits to personal accounts:

| Bank | Account Number | Deposit |
|------|----------------|---------|
| Energy People | | |
|   Federal Credit Union | 11195-004 | --- |
| Barnett Bank | 1672684397 | $125,640 |
| Chemical Bank | 00506140-3 | 395,039 |
| Security Savings | | |
|   & Loan | 23-8351019-1 | 219,001 |
| Security Savings | | |
|   & Loan | 23-1006720 | 15,575 |
| First Fidelity | 0010186161 | 176,807 |
| Chemical Bank | 623-503-349 | 57,137 |
| Collective Federal | 36-6-750909 | 18,922 |
| Barnett Bank | 1679177650 | 277,265 |
|   Total bank deposits - 1990 | | 1,285,386 |

Cash expenditures:
  a. Purchase 10/18/90 - 407 Canal Street      5,258
  b. Purchase 7/2/90 - 610 Reed Street      11,592
  c. Purchase 6/18/90 - Lot 26 B 388 Unit 12      25,000
  d. 1990 Plymouth Voyager 10/9      6,500
  e. Boston Whaler boat 7/26      15,850

Rental income checks paid by Radtam, Inc., to
taxpayer and not deposited into taxpayer's bank
accounts used in above analysis.      44,000

Rental income checks paid to taxpayer by managing
agent of taxpayer's Marco Island, FL rental
properties and not deposited into taxpayer's bank
accounts used in above analysi.
  Agents:  Harborview Realty, Inc.      1,000
         Horizon by Sea Realty      8,809

Rental income checks paid to taxpayer by managing
agent of taxpayer's New Jersey rental properties
and not deposited into taxpayer's bank accounts
used in analysis.
  Agents:  Van Dyk Group, Inc.      3,080
         Newbern Realty      9,774

Rental income checks paid to taxpayer directly
by tenants for rental of Marco Island or New
Jersey properties and not deposited into
taxpayer's bank accounts used in above analysis.      16,761
  Total gross income 1990      1,433,010

Less nontaxable deposits/items:
  a. Transfer between accounts      (487,811)
  b. Social Security benefits (nontaxable)      (5,544)
  c. Check to cash 611 account 00506140      (30,000)

Receipts Per Return:
  a. Wages/salary per return      (2,840)
  b. Interest income per return      (9,426)
  c. Dividend income per return      (1,170)
  d. Social Security (tax)      (5,544)
  e. Rents (Gross)      (311,700)
  f. Pension/annuities      (4,263)
Equals: Total nontaxable deposit/items      (858,298)

Total gross income unreported      574,712
Taxable income per return      (73,861)
Total income unreported - 1990      500,851

APPENDIX G

1991

Bank deposits to personal accounts:

| Bank | Account Number | Deposit |
|---|---|---|
| Energy People Federal Credit Union | 11195-004 | --- |
| Barnett Bank | 1672684397 | $59,702 |
| Chemical Bank | 00506140-3 | 340,750 |
| Security Savings & Loan | 23-8351019-1 | 343,915 |
| Security Savings & Loan | 23-1006720 | 6,400 |
| First Fidelity | 0010186161 | 63,395 |
| Chemical Bank | 623-503-349 | 13,802 |
| Collective Federal | 36-6-750909 | 7,119 |
| Barnett Bank | 1679177650 | 24,719 |
| Barnett Bank C.D. | 0031756406 | 97,000 |
| Barnett Bank C.D. | 0031760714 | 96,000 |
| Barnett Bank C.D. | 0031760659 | 97,000 |
| Total bank deposit - 1991 | | 1,149,802 |

Cash expenditures:
  a. Purchase 3 Savings Bonds at face
     value of $10,000                                          15,000

Rental income checks paid by Radtam, Inc., to
taxpayer and not deposited into taxpayer's bank
accounts used in above analysis.                              56,000

Rental income checks paid to taxpayer by managing
agent(s) of taxpayer's Marco Island, FL rental
properties and not deposited into taxpayer's bank
accounts used in above analysis.
Agent(s):  Horizon By Sea Inc.                                 9,951

Rental income checks paid to taxpayer by managing
agent of taxpayer's New Jersey rental properties
and not deposited into taxpayer's bank accounts
used in above analysis.
Agent(s):  Bayshore Realty                                     3,816
           Newbern Realty                                     13,710

Rental income checks paid to taxpayer directly
by tenants for rental of Marco Island or New
Jersey properties and not deposited into
taxpayer's bank accounts used in above analysis.              31,790
  Total gross income                                       1,280,069

Less nontaxable deposits/items:
  a. Paybacks to corp. from personal account                (87,500)
  b. Social Security benefits (nontaxable)                   (5,850)
  c. Transfer between accounts                             (177,500)

Receipts per return:
  a. Wages/salary per return                                 (3,003)
  b. Interest income per return                              21,522)
  c. Dividend income per return                              (1,202)
  d. Pension/annuities                                       (4,263)
  e. Social Security (tax)                                   (5,850)
  f. Rents (gross)                                         (368,930)
  g. Barnett CD (3)                                        (290,000)
Equals: Total nontaxable deposit/items                     (965,620)

Total gross income unreported                                314,449
Taxable income per return                                   (78,032)
Total income unreported - 1991                               236,417

APPENDIX H

| | 1988 | 1989 | 1990 | 1991 |
|---|---|---|---|---|
| Mathematical errors: | | | | |
| Reported taxable income allowed twice | --- | 71,907 | 73,861 | 78,032 |
| CD purchases deducted as reported receipts | --- | --- | --- | 290,000 |
| Transfer[1] included as $5,000.10.  Should be $500.10 | --- | --- | 4,500 | --- |
| Distributive share Radtam "S" Corp. income reported and included in deposits from corp. | (38,341) | --- | --- | --- |
| Salary withholding - gross is taxable but only net was deposited | 440 | 326 | 292 | 301 |
| Transfers used to purchase CD's not in statutory notice | --- | --- | --- | (214,500) |
| Transfers between accounts - not in statutory notice of deficiency: | | | | |
| To First Fidelity[2] Bank | --- | --- | (25,000) | --- |
| To Barnett[3] Bank | --- | --- | (85,000) | --- |
| To Barnett[4] Bank | --- | --- | (50,000) | --- |
| To Chemical[5] Bank | --- | --- | --- | (22,000) |
| To Chemical[6] Bank from Commerce Bank | --- | --- | --- | (17,000) |
| To Chemical[7] Bank | --- | --- | --- | (26,000) |
| To Chemical[8] Bank | --- | --- | --- | (8,255) |
| Refund of advance to Radtam | --- | (5,425) | --- | --- |
| Corp. funds used to purchase 610 S. Reed | --- | --- | 17,000 | --- |
| Radtam funds[9] used to pay King Mortgage on personal real estate | --- | 64,000 | --- | --- |
| Cash expenditure/Lot 26 B 388 Unit 12 | --- | --- | (25,000) | --- |
| Specific rental income checks deposited to corporate bank accounts - added separately in statutory notice of deficiency | --- | (44,250) | (83,424) | (115,267) |
| Additional identified paybacks to corporations: | | | | |
| Chemical[10] Bank | (10,000) | --- | --- | --- |
| Chemical[11] Bank | (10,000) | --- | --- | --- |
| Barnett[12] Bank | (100) | --- | --- | --- |
| Barnett[13] Bank | (100) | --- | --- | --- |
| Barnett[14] Bank | --- | (11,000) | --- | --- |
| Chemical[15] Bank | --- | (16,000) | --- | --- |
| Barnett[16] Bank | --- | --- | --- | (2,400) |

(continued...)
(Appendix H continued...)

| | 1988 | 1989 | 1990 | 1991 |
|---|---|---|---|---|
| Deposits from bank statements originally missing: | | | | |
| Chemical[17] | | | | |
| 2/17/88 deposit | 20,000 | --- | --- | --- |
| 2/22/88 deposit | 339 | --- | --- | --- |
| Radtam withdrawals | 11,118 | --- | --- | --- |
| First Fidelity[18] Bank | --- | 5,000 | --- | --- |
| Insurance claim - nondeposit refund - 4/29/92 property settlement refund 9/30/91 Cinnaminson Sewer Authority | --- | --- | --- | (14,000) |
| Corporate withdrawal 2/1/91 used to purchase $68,000 cashier's check.[19] (Cashier's check from personal account included as transfer in statutory notice) | --- | --- | --- | 25,000 |
| Corporate funds - purchase for Bradtam | --- | --- | --- | 50,000 |
| Check No. 611 to cash - to Boatworks for purchase 407 Canal Street given as cash withdrawal in statutory notice. | --- | --- | 30,000 | --- |
| Savings bond purchases not with cash. | --- | --- | --- | (15,000) |
| Radtam check - points to refinance personal mortgage. | --- | 10,657 | --- | --- |
| Interest income Commerce Bank - not in deposits | --- | --- | 135 | 86 |
| Interest income, Security Savings & Loan[20] not included in deposits | 435 | 146 | --- | --- |
| Interest income, Energy People Federal Credit Union | 135 | --- | --- | --- |
| Deposits to Security Savings & Loan | --- | (72,000) | --- | --- |
| Corporate checks used to purchase cashier's check at Security Savings & Loan[21] for purchase of 212 W. Broad Street Property | --- | 72,000 | --- | --- |
| Proceeds mortgage refinance - deposit to Radtam savings account (2/29/88) | (179,722) | --- | --- | --- |
| Personal funds deposited to corporate bank account on 2/1/88 | (46,340) | --- | --- | --- |
| Corporate funds used to purchase 212 W. Broad (3/31/89) | --- | 21,000 | --- | --- |
| Personal items paid by corporation: | | | | |
| Per statutory notice | --- | (2,247) | --- | --- |
| Corrections to statutory notice | --- | [22]860 | [23]2,535 | --- |
| Net adjustments to statutory notice | (252,136) | 94,974 | (140,101) | 8,997 |

(continued...)

(Appendix H continued...)

[1]Check No. 622, Chemical Bank.
[2]Account No. 6161 (2/12/90)
[3]Account No. 2684-397 (6/18/90)
[4]Account No. 177650 (6/25/90)
[5]Account No. 506-140-3 (1/31/91)
[6]Account No. 506-140-3 (1/31/91)
[7]Account No. 506-140-3 (1/31/91)
[8]Account No. 506-140-3 (2/04/91)
[9]Account No. 600-871255 (2/21/89)
[10]Account No. 506140-3 (2/16/88), Check No. 157.
[11]Account No. 506140-3 (2/16/88), Check No. 158.
[12]Account No. 2684-397 (6/22/88), Check No. 114.
[13]Account No. 2684-397 (10/4/88), Check No. 115.
[14]Account No. 2684-397 (2/27/89), Check No. 118.
[15]Account No. 506140-3 (2/27/89), Check No. 278.
[16]Account No. 84397     (2/26/91), Check No. 157.
[17]Account No. 506140-3.
[18]Account No. 10186161.
[19]On Feb. 1, 1991, Mr. Bacon purchased a cashier's check in the amount of $68,000 from Chemical Bank made payable to himself.  Mr. Bacon obtained $25,000 of the cost of the cashier's check with a $25,000 withdrawal from Radtam's savings account at Chemical Bank, account No. 600-871255, and the remaining $43,000 from petitioners' savings account at Chemical Bank, account No. 623 503 349.  The $68,000 was included as a nontaxable transfer in the bank deposits listed in respondent's bank deposit analysis, as incorporated in the statutory notice.
[20]Account No. 23-100672.
[21]Account No. 23-100672.
[22]The record is unclear on how the parties arrived at this number.
[23]The record is unclear on how the parties arrived at this number.

APPENDIX I

1988

Bank deposits to personal accounts:

| Bank | Account Number | Deposit |
|------|----------------|---------|
| Energy People Federal Credit Union | 11195-004 | $5,000 |
| Barnett Bank | 1672684397 | 16,316 |
| Chemical Bank | 00506140-3 | 270,674 |
| Security Savings & Loan | 23-8351019-1 | 182,947 |
| Security Savings & Loan | 23-1006720 | 89,748 |
| First Fidelity | 0010186161 | 278,347 |
| Total gross deposits | | 843,032 |

Less:
Per statutory notice

| | |
|---|---|
| a. Redeposited items, transfers, checks to cash | (221,947) |
| b. Nontaxable items | (5,094) |
| c. Repayment to corporation | (73,000) |
| Additional repayments to corporation | (22,200) |
| Proceeds of personal mortgage deposited in corporate account | (179,722) |
| Repayment of loan to petitioners deposited in corporate account | (46,339) |
| Reduction to income - Subchapter S income | (38,341) |
| Equals: Net deposits | 256,389 |

Less:

| | |
|---|---|
| a. Wages/salary per return | (3,196) |
| b. Interest income per return | (3,286) |
| c. Dividend income per return | (1,357) |
| d. Schedule D per return | (1,088) |
| e. Pension/annuities | (4,060) |
| f. Social Security (tax) | (5,094) |
| g. Rents (gross) | (136,000) |
| Equals: Gross income per tax return | (154,081) |

| | |
|---|---|
| Difference between gross salary and actual salary deposited | 440 |
| Plus corporate expenditures on petitioners' behalf | 5,007 |
| Total unreported income from bank deposits | 107,755 |

APPENDIX J

1989

Bank deposits to personal accounts:

| Bank | Account Number | Deposit |
|---|---|---|
| Energy People Federal Credit Union | 11195-004 | --- |
| Barnett Bank | 1672684397 | $27,523 |
| Chemical Bank | 00506140-3 | 250,835 |
| Security Savings & Loan | 23-8351019-1 | [1]142,400 |
| Security Savings & Loan | 23-1006720 | --- |
| First Fidelity | 0010186161 | 32,867 |
| Chemical Bank | 623-503-349 | 76,051 |
| Collective Federal | 36-6-750909 | 512 |
| Total bank deposits | | 530,188 |

Cash expenditures:
| | |
|---|---|
| a. Notes receivable (Ras) | 64,000 |
| b. Purchase 212 W. Broad Street (3/31/89) | 74,285 |
| c. Radtam check - Points paid to refinance personal mortgage | 10,657 |
| d. Corporate funds[2] used to purchase 212 West Broad Street | 93,000 |
| e. Corporate funds used to pay mortgage on 211 East 17th | 64,000 |
| | [3]305,942 |

| | |
|---|---|
| Rental income checks paid by Radtam, Inc., to taxpayer and not deposited into taxpayer's bank accounts used in above analysis. | 41,000 |
| Rental income checks paid to taxpayer by managing agent(s) of taxpayer's Marco Island, Fl., rental properties and not deposited into taxpayers' bank accounts used in above analysis. Agent: Horizon by Sea | 3,250 |
| Total gross income | 880,380 |

Less nontaxable deposits/items per statutory notice:
| | |
|---|---|
| a. Paybacks to corp. from personal account | (55,925) |
| b. Social Security benefits (nontaxable) | (4,710) |
| c. Transfer between accounts | (173,000) |

Additional repayments and transfers:
| | |
|---|---|
| a. Refund of advance to Radtam | (5,425) |
| b. Personal rental income deposited to corporate accounts | (44,250) |
| c. Additional paybacks to corporation | (27,000) |
| Total reductions to bank deposits | (310,310) |

Receipts per return:
| | |
|---|---|
| a. Wages/salary per return | (4,631) |
| b. Interest income per return | (3,008) |
| c. Dividend income per return | (1,123) |
| d. Pension/annuities | (4,263) |
| e. Social Security (tax) | (4,710) |
| f. Rents (gross) | (232,000) |
| Equals: Gross receipts per return | (249,735) |
| Difference between gross salary and actual salary deposited | 326 |
| Plus personal items paid by corporation | 860 |
| Total unreported income from bank deposits: | [4]321,521 |

[1]Because of a typographical error, respondent incorrectly reflected gross deposits of "$142,000". The correct figure is "$142,400".

[2]Corporate funds were drawn from two accounts: $72,000 from the Security Savings account and $21,000 from Radtam's savings account at Chemical Bank (account No. 600-871255).

[3]Because of a computational error, respondent incorrectly reflected total cash expenditures of "$306,482". The correct figure is "$305,942".

[4]The net effect of respondent's typographical and computational errors is a $140 reduction in petitioners' unreported income.

APPENDIX K

1990

Bank deposits to personal accounts:

| Bank | Account Number | Deposit |
|------|---------------|---------|
| Energy People Federal Credit Union | 11195-004 | --- |
| Barnett Bank | 1672684397 | $125,640 |
| Chemical Bank | 00506140-3 | 395,039 |
| Security Savings & Loan | 23-8351019-1 | 219,001 |
| Security Savings & Loan | 23-1006720 | 15,575 |
| First Fidelity | 0010186161 | 176,807 |
| Chemical Bank | 623-503-349 | 57,137 |
| Collective Federal | 36-6-750909 | 18,922 |
| Barnett Bank | 1679177650 | 277,265 |
| Total bank deposits - 1990 | | 1,285,386 |

Cash expenditures:
| | |
|---|---|
| a. Purchase 10/18/90 407 Canal Street | 5,258 |
| b. Purchase 7/2/90 610 Reed Street | 47,592 |
| c. 1990 Plymouth Voyager 10/9 | 6,500 |
| d. Boston Whaler boat 7/26 | [1]15,850 |

Gross income deposited to corporate account:
| | |
|---|---|
| Personal rental income treated as income in Statutory Notice of Deficiency | 83,424 |
| Difference between gross salary and actual salary deposited | 292 |
| Personal items paid by corporation | 2,535 |
| Total increase in bank deposits: | 161,451 |

Less nontaxable deposits/items:
| | |
|---|---|
| a. Transfer between accounts | (487,811) |
| b. Social Security benefits (nontaxable) | (5,544) |
| c. Check to cash 611 account 00506140 | (30,000) |

Additional repayments and transfers:
| | |
|---|---|
| a. Corrections to statutory notice of deficiency for check to cash | 30,000 |
| b. Correction of transfer listed in statutory notice of deficiency | 4,500 |
| c. Personal rental income deposited to corporate accounts | (83,424) |
| d. Additional transfers not listed in statutory notice of deficiency | (160,000) |

Receipts Per Return:
| | |
|---|---|
| a. Wages/salary per return | (2,840) |
| b. Interest income per return | (9,426) |
| c. Dividend income per return | (1,170) |
| d. Social Security (tax) | (5,544) |
| e. Rents (gross) | (311,700) |
| f. Pension/annuities | (4,263) |
| Total reductions: | (1,067,222) |

| | |
|---|---|
| Total gross income unreported: | 379,615 |

[1]Because of a typographical error in respondent's bank deposit analysis, "$15,580" should be "$15,850". As a result, petitioners' total unreported gross income is increased by $270.

APPENDIX L

1991

Bank deposits to personal accounts:

| Bank | Account Number | Deposit |
|------|----------------|---------|
| Energy People Federal Credit Union | 11195-004 | --- |
| Barnett Bank | 1672684397 | $59,702 |
| Chemical Bank | 00506140-3 | 340,750 |
| Security Savings & Loan | 23-8351019-1 | 343,915 |
| Security Savings & Loan | 23-1006720 | 6,400 |
| First Fidelity | 0010186161 | 63,395 |
| Chemical Bank | 623-503-349 | 13,802 |
| Collective Federal | 36-6-750909 | 7,119 |
| Barnett Bank | 1679177650 | 24,719 |
| Barnett Bank C.D. | 0031756406 | 97,000 |
| Barnett Bank C.D. | 0031760714 | 96,000 |
| Barnett Bank C.D. | 0031760659 | 97,000 |
| Total bank deposit - 1991 | | 1,149,802 |

Cash expenditures:
a. Purchase 3 savings bonds at face
   value of $10,000                                             15,000
b. Less: Correction - $15,000 paid by check                   (15,000)
c. Use of Radtam funds to purchase assets for Bratam           50,000

Gross income deposited to corporate account:
Personal rental income treated as income in statutory notice
  of deficiency                                               [1]115,267

Difference between gross salary and actual salary deposited      301
  Total increase in bank deposits:                            165,568

Less nontaxable deposits/items:
a. Paybacks to corp. from personal account                    (87,500)
b. Social Security benefits (nontaxable)                        (5,850)
c. Transfer between accounts                                  (177,500)

Additional repayments, transfers and nontaxable items:
a. Transfers from personal accounts used to purchase Barnett
   Bank certificates of deposit                               (214,500)
b. Personal rental income deposited to corporate accounts     (115,267)
c. Additional transfers not listed in statutory notice of
   deficiency                                                  (73,255)
d. Additional payback to corporation                           (2,400)
e. Nontaxable refund from sewer authority                     (14,000)
f. Withdrawal from corporate account treated as a transfer
   in statutory notice of deficiency                           25,000

Receipts per return:
a. Wages/salary per return                                     (3,003)
b. Interest income per return                                 (21,522)
c. Dividend income per return                                  (1,202)
d. Pension/annuities                                           (4,263)
e. Social Security (tax)                                       (5,850)
f. Rents (gross)                                             (368,930)
  Total reductions:                                        (1,070,042)

  Total gross income unreported:                              245,328

[1]Because of a typographical error in respondent's bank deposit analysis,
"$115,627" should be "$115,267". As a result, petitioners' total unreported gross
income is decreased by $360.